

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

AUG 1 5 2003

CLERK, U.S. DISTRICT COURT

By _____
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

ORIGINAL

| | | |
|---|---|---|
| FONDA DUSE | § | |
|     Plaintiff | § | |
| | § | |
| | § | Civil Action No. 3:03-CV-0164-R |
| v. | § | |
| | § | |
| CENTER OPERATING | § | |
| COMPANY, | § | |
| L.P. | § | |
|     Defendant | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**SECOND MOTION TO DISQUALIFY**

**TO THE HONORABLE MAGISTRATE PAUL STICKNEY:**

Per the Court's request and the record developed at the hearing on the Defendant's "Second" Motion to Disqualify the Plaintiff's Counsel submits the following for the Courts consideration.

As the Court knows, the undersigned attorney, was not the attorney of record when the Defendants filed their First Motions to Disqualify. After the undersigned began representation of Ms. Duse and Ms. Mack, Ms. Duse's deposition was taken by the Defendant on or about May 16, 2003. Despite the claims of secrecy and sanctimonious preservation of the attorney/client privilege, the attorney for the Defendant developed the attached line of questioning from Ms. Duse which clearly demonstrates the Defendant's claims of attorney/client privilege were waived at least with regard to Duse. Apparently Duse was provided "privileged" information

voluntarily by the Defendant's Human Resources Director(Colette Vallot) who is also an attorney. Attached hereto and adopted herein by reference as if set forth verbatim are pages 276-286 of the deposition of Fonda Duse. The Plaintiff would submit that the claim of attorney/client privilege and the "efforts" of the Defendant to preserve the privilege are disingenuous. During Ms. Duse's deposition it became clear the Defendant had voluntarily waived any privileges and the current claims for disqualification because of putative attorney/client privilege are meritless.

In *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 834-836 (Tex. 1994). The Texas Supreme Court addressed the issue of disqualification of a lawyer and his law firm where a legal assistant/paralegal works for a party on one side of a lawsuit and then changes employment and is hired by the attorney on the opposing side of that same lawsuit. In the Brief in Support of Defendant's Second Motion to Disqualify Plaintiff's Counsel, the Defendant claims that the *Phoenix* court began "its analysis by adopting a 'conclusive presumption that confidences and secrets were imparted during the course of the paralegal's work on the case.' *Phoenix* at 834." However, the Defendant fails to note that the Court only agrees "that a paralegal who has actually worked on a case must be subject to the presumption" if she learned of confidences about that case. The Defendant has attempted to broaden the Phoenix parameters to include a part-time receptionist to the general counsel of a business and reclassify Allen as a paralegal. As the record reflects, Allen was never a paralegal or legal assistant during her employ with the Defendant. Also, the Defendant has interpreted "has actually worked on" the case in question, to mean simply assist the counsel by answering phones or making copies rather than working on the case as a legal assistant. The fact that Ms. Allen was employed at COC while Ms. Mack's case was pending, means nothing in this matter. Ms. Allen never "actually worked on"



Ms. Mack's case at all. If this strained argument were valid, law firms would be reluctant to hire file clerks from other firms.

There are but a few reported decisions where a legal assistant/paralegal switches sides and works on the same case which required disqualification. In, *In Re American Home Products*, the legal assistant in question not only testified she had been hired to perform work on a case and that she later worked the same case from the opposing side but she also interviewed potential fact witnesses, arranged meetings between counsel and potential expert witnesses, drafted memoranda to counsel on how to best use potential expert witnesses, examined the jury selection process, and attended similar trials to report their outcome to counsel. *See In re American Home Products*, 985 S.W.2d 68 (Tex. 1998).

In *Phoenix*, the legal assistant worked for the plaintiff, then left to billed 36 minutes to the opposing side in the case when she located a pleading and generally discussed the case with lead counsel. The assistant then left to be *rehired* by the Plaintiff's lawyer. COC argues this exposure is analogous to Ms. Allen's situation. Allen's minute involvement did not involve work on a case and The *Phoenix* legal assistant gained substantial knowledge of the particular case *before* she switched sides. Here Allen gained nothing and no knowledge of anything privileged regarding the Mack or Duse cases.

All of the cases focus on the notion that the legal assistants/paralegals had gleaned substantial information and participated in an active role in a particular case prior to switching to the opposing side. When Ms. Allen left COC, after playing the passive receptionist/file clerk role for Mr. Lankford, and went to work for Wall, no case involving either Ms. Mack or Ms. Duse was pending against COC involving representation by the Law Offices of John E. Wall, Jr. For this reason alone, the

impending disqualification motion should be denied.

As the Texas Supreme Court stated in the *Marshall* decision, the focus of disqualification is upon a "paralegal" who has actually worked on a case. *Id 834* In this particular case Yolanda Allen was never employed as a paralegal. She was employed as an administrative assistant to Lance Lankford. The only evidence of any possibility that Yolanda Allen even came within a mile of any alleged privileged information was the copying project that she performed for Mr. Lankford at his request. There is no evidence, and the reason there is no evidence that Allen worked on any case, is because she never did such type of work. Although provided the opportunity to cross examine Ms. Allen at the hearing, no evidence was adduced by the Defendant that the copying job that Ms. Allen performed bore any relationship to anything privileged in the Duse or the Mack case. For all anyone knows, Ms. Allen was only copying a personnel file with nothing from an attorney in it.

As the Court noted in *Marshall*, paralegal's are not automatically presumed to share confidential information with members of their firms. As the Texas Supreme Court also mentioned in the *Marshall* decision, disqualification is not required as long as "the practical affect of formal screening has been achieved". As was evidenced by the proffer of John E. Wall, Jr., Ms. Allen was screened at the time that she was hired. Ms. Allen did not perform paralegal or legal secretary work for Lance Lankford. The most that Mr. Lankford advances as grounds for disqualification is the alleged possibility for Allen to have overheard conversations and the alleged possibility of accidently reading information that may have been germain to the Duse and Mack case. Such a stretch would hardly, warrant disqualification.

The Plaintiff has been unable to find any case where a clerical persons' employment at a law firm would warrant disqualification. The obvious reason, the

Plaintiff would suggest, is that clerical staff, who are not able to access alleged confidences would never constitute the sharing of confidential or secret information. The apparent concern of the Defendant arises from a unfounded, paranoid, concern that "Wall has exploited COC's privileged and confidential information and it is not possible to prevent Plaintiff from capitalizing on his breaches without disqualifying Wall as counsel". That assertion is made without any factual support for the claim.

As is evident and undisputed, the Defendant can refer to no one single bit of information that Allen allegedly came into contact with that was privileged. All the Defendant has done is suggested, without basis, that Allen was in contact with confidential information. The extent of Allen's involvement, which is undisputed, is that of copying documents for COC's former law firm. There is no claim and no suggestion that she acquired anything of confidence. One is left to wonder what is the source of the obvious paranoia which plagues COC.

As the Court noted in *Marshall*, as with any disqualification motion, the trial court must adhere to exacting standards so as to discourage any use of a disqualification motion as a dilatory tactic. *Id* 836. In the *Marshall* opinion the Court cites as support for that precept *Spears v. Fourth Court of Appeals*, 797 SW 2d. 654 (Tex.)1990. In *Spears*, the Texas Supreme Court refused to disqualify a law firm from representing someone, when an employee of the opposing party began to work for the Plaintiff's lawyers. As was noted in the *Spears* decision, and is very similar to this case, the Defendants declined to file a motion to disqualify until close proximate to trial. Mack was set for trial August 4, 2003. Duse is set for trial December 8, 2003. Much as in the current litigation, the Defendants sought to disqualify counsel with mere allegations of alleged unethical conduct only claiming a remote possibility of the violation of the attorney/client privilege without any

evidence.

Moreover, the Defendant's confidences were already voluntarily provided to Duse anyway. As is evidenced in the attached pages of that deposition, confidential information, was provided to Duse to read while Duse was still employed by COC. In fact an "audit" was shown to Duse and read by Duse which allegedly demonstrated but one of many things that Ms. Vallot suggested was indicative of th poor quality of work by African Americans. With the Defendant having volutarily disclosed information to Duse, the complaint regarding Allen is meritless.

## DISQUALIFICATION IS A "HARSH REMEDY"

Justice Rose Spector, the author of the *Phoenix* opinion, penned a dissent *In re American Home Products*. Justice Spector noted that disqualification motions endanger many interests, "such as clients' right to the counsel of their choice, the financial burden of replacing counsel," and the mobility of nonlawyers. In fact, in all the above-referenced cases, among the chief concerns of the Court was avoiding the restriction on the mobility of nonlawyers, such as Ms. Allen. It is the Court's duty to protect their security and deny dilatory disqualification motions for tactical and vexatious reasons. Otherwise, employers may be disinclined to hire nonlawyers solely because they have worked for a different law firm, despite their clerical job description and duties.

## THE HIRING MS. ALLEN DOES NOT MERIT DISQUALIFICATION

Mr. Wall never concluded that Allen's knowledge of confidential communications had lost its privileged character, as COC contends, because how can someone lose something she never had? Similarly, no wall need be built around Ms. Allen upon employment at the Law Offices of John E. Wall, Jr. because why build

a wall around something that does not require protection?

Allen's limited role as a receptionist does not warrant the disqualification of Wall. Doing so would limit the mobility of nonlawyers with similar duties from law firm to law firm because if a firm did hire them, who is to say that later, a case that a nonlawyer had answered the phone about or touched a letter without reading, would somehow subject the lawyer to disqualification. For these reasons, the Defendant's Motions should be denied.

Respectfully submitted,

**LAW OFFICES OF JOHN E. WALL, JR.**
5728 Prospect Avenue, Suite 2001
Dallas, Texas 75206-7284
(214) 887-0100 (*telephone*)
(214) 887-0173 (*telecopier*)

John E. Wall, Jr.
State Bar No. 20756750
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served on opposing counsel as via U. S. Mail on this 15th day of August, 2003.

Ellen Perlioni
Littler Mendelson
2001 Ross Ave., Ste. 2600
Dallas, Texas 75201

John E. Wall